Elena Ives, Cal Bar No. 331159
eives@freedomfoundation.com
Shella Sadovnik, Cal Bar No. 267551
ssadovnik@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA 98507
Telephone: (360) 956-3482
Facsimile: (360) 352-1874

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

**ATISHMA KANT**, individual,

          Plaintiff,

  v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 721**, a labor organization; and **ROB BONTA** in his official capacity as Attorney General of California,

          Defendants.

Case No.: 21-CV-1153

**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS.**

[42 U.S.C. § 1983]

COMPLAINT
NO.

1

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1

**INTRODUCTION**

2    1.    This case is about a complicit government employer and abusive

3  legislation which rendered Plaintiff Atishma Kant ("Ms. Kant") mute and

4  marginalized as Service Employees International, Local 721 ("SEIU") leveraged its

5  considerably unequal power against her to not only garnish her paychecks without

6  consent for years, but also to brazenly reserve the right to extend those continued

7  seizures into the indefinite future.

8    2.    This case is also about SEIU's efforts to separate Ms. Kant from her

9  liberty interests secured by the Constitution and vindicated by the Supreme Court in

10  *Janus v. AFSCME, Council 31,* 138 S. Ct. 2448, 2486 (2018), through

11  unconscionable tactics built into its membership forms in order to circumvent the

12  will of the Court. The facts expose that membership authorization agreement to be

13  an adhesion contract which is procedurally and substantively unconscionable, and

14  therefore void and unenforceable under California law. Thus, it provides Defendants

15  with no consent or waiver of Ms. Kant's First Amendment right not to fund SEIU's

16  political activity.

17    3.    The United States Constitution mandates that consent to fund union

18  advocacy be freely and intelligently given and based on transparently disclosed

19  information.  It does not sanction an unconscionable membership agreement and

20  manipulation of an opt-out window so that SEIU can continue to collect dues from

21  Ms. Kant with no real option to resign. These state actions violate Ms. Kant's First

22  Amendment right not to have her wages forcibly taken and used for political activity

23

24

COMPLAINT
NO.

2

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1   with which she disagrees absent voluntary, intelligent, and knowing consent to

2   waive that right. *Id.* Additionally, the continued deductions violate Ms. Kant's right

3   to procedural and substantive due process.

4       4.      For these reasons, Ms. Kant bring this lawsuit under 42 U.S.C. § 1983

5   to recover her unconstitutionally seized wages and to vindicate her First Amendment

6   rights as recognized by the United States Supreme Court.

7                    **JURISDICTION AND VENUE**

8       5.      This action arises under the First and Fourteenth Amendments to the

9   United

10      States Constitution, 42 U.S.C. § 1983 (action for deprivation of federal civil

11  rights), and 28 U.S.C. §§ 2201-2202 (action for declaratory relief).

12      6.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331

13  (federal question jurisdiction) and 28 U.S.C. § 1343 (jurisdiction for deprivation of

14  federal civil rights).

15      7.      Venue is proper in this Court because a substantial portion of the events

16  giving rise to the claims occurred in San Bernardino County within the Central

17  District of California. 28 U.S.C. § 1391(b)(2).

18                          **PARTIES**

19      8.      Plaintiff Atishma Kant is a Business Process Specialist for the

20  Employer. She has worked for the Superior Court of California, County of San

21  Bernardino ("Employer") for over 16 years.

22      9.      Ms. Kant seeks relief pursuant to the Civil Rights Act, 42. U.S.C., §

23

24  COMPLAINT
    No.
                                    3

1    1983 for declaratory and injunctive relief, compensatory and nominal damages, and

2    any other remedy this Court deems proper.

3         10.    Defendant Service Employees International Union, Local 721, is the

4    exclusive bargaining representative for Ms. Kant's bargaining unit. Under California

5    state law, Cal. Gov't Code § 1157.12, and the terms of the applicable collective

6    bargaining agreement, SEIU is empowered to represent to Employer whether Ms.

7    Kant has affirmatively consented to have union dues withdrawn from her pay. The

8    Union office is located at 1545 Wilshire Blvd., Los Angeles, CA 90017.

9         11.    Defendant Rob Bonta, California's Attorney General, is sued in his

10   official capacity as the representative of the State of California charged with the

11   enforcement of state laws, including the provisions challenged in this case. His

12   address for service of process is 300 South Spring Street, Los Angeles, California,

13   90013 in Los Angeles County.

14                          **FACTUAL ALLEGATIONS**

15        12.    On April 28, 2016, SEIU and Employer signed a Memorandum of

16   Understanding ("MOU") designating SEIU as the exclusive representative for Ms.

17   Kant's bargaining unit. Exhibit A. The MOU's stated expiration date was September

18   30, 2019.

19        13.    On May 29, 2018, Ms. Kant joined SEIU by signing a membership form

20   that purported to incorporate the MOU's corresponding opt-out window providing

21   that Ms. Kant could cease payments to SEIU between the dates of July 2 through

22   August 1, 2019. Exhibit B.

23

24   COMPLAINT
     NO.                                    4

14.     On December 21, 2018, SEIU and Employer signed a Side Letter (the "2019-2021 Side Letter") agreement which extended the MOU's expiration forward two years to September 30, 2021. Exhibit C.

15.     On July 11, 2019, Ms. Kant submitted her opt-out request. Exhibit D.

16.     On July 17, 2019, Ms. Kant was notified by SEIU that the dues deductions would not cease. Exhibit E.

**Ms. Kant joined SEIU by signing a standardized membership form**

1.     Ms. Kant was hired by the Employer on October 30, 2004, as a Legal Processing Assistant and was promoted to Operations Supervisor.

2.     She became a Business Process Specialist on May 12, 2018, and joined SEIU May 29, 2018, by signing one of the union's pre-printed standardized membership authorization forms (the "Membership Form").[1]

*The Membership Form was an unconscionable contract of adhesion*

3.     Ms. Kant signed a Membership Form that had been uniformly drafted, prepared, and printed by SEIU. It was offered to Ms. Kant on a take-it-or-leave-it basis, as she was given no option to negotiate, modify, or waive any of portion of the standardized terms.

*The Membership Form was an unconscionable contract of indefinite duration*

4.     SEIU's membership forms displayed the following provision, in small print and positioned at the end of a paragraph: "I agree to be bound by the Constitution and Bylaws of the Union and by any contracts that may be in existence

---

[1] SEIU was the exclusive representative for Kant's new department when she changed job classification to Business Process Specialist.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    at the time of application *or that may be negotiated by the Union*." (Emphasis

2    added.) Exhibit B.

3                    *The Membership Form did not display binding terms from the MOU*
                    *that bound Ms. Kant indefinitely*

4          5.      Ms. Kant signed the Membership Form on May 29, 2018, as

5    explained above.

6          6.      The Membership Form incorporated extrinsic provisions that were

7    located in the MOU and not in the Membership Form. Specifically, Membership

8    Form stated:

9          "Irrespective of my membership in the Union, deductions for this purpose
           shall remain in effect and be irrevocable unless revoked by me in writing *in*
10         *accordance with applicable provisions* in the memorandum of understanding
           or agreement between my employer and SEIU Local 721." (Emphasis added.)
11         Exhibit B.

12         7.      The "applicable provisions" in the MOU referenced the Maintenance

13   of Membership provision in Article 5. Article 5 specified the future escape window

14   by which Ms. Kant's might halt payroll deductions. The provision states in

15   pertinent part:

16         "Employees who have authorized Union dues deductions at such time of a
           Supreme Court decision shall continue to have dues deductions or at any time
17         subsequent to a Supreme Court decision shall continue to have such dues
           deduction made by the Court during the term of this MOU; provided,
18         however, that any employee in the Unit may terminate such Union dues during
           the thirty (30) day period commencing ninety (90) days before the expiration
19         of the MOU by notifying the Union of their termination of the Union dues
           deduction." Exhibit A, Art. 5.
20
           8.      The MOU was not present and "easily available" to Ms. Kant at the
21
     time she signed the card which incorporated its terms.
22                  *The specter of forced and inevitable fees robbed Ms. Kant of*
                    *meaningful choice whether or not to sign the form*
23

24   COMPLAINT
     NO.                                      6

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

9.    Under the applicable MOU,[2] on the date that Ms. Kant joined SEIU, agency or "fair share fees" equal to the cost of union dues were automatically deducted from the earnings of all nonmembers as a "condition of new or continued employment."[3] Exhibit A.

10.    Thus, Ms. Kant signed the Membership Form under the belief that she would be forced to pay a fee equal[4] to the full amount[5] of membership dues whether she joined SEIU or not.

11.    Thus, at the time that Ms. Kant signed the Membership Form, SEIU held disproportionate power to compel her to pay deductions in an equal amount to membership dues, regardless of membership. This deprived Ms. Kant of a meaningful choice whether or not to sign the union membership form.

12.    Article 5 of the 2015-2019 MOU references a future "Supreme Court decision," *see supra.* That demonstrates that SEIU was on notice that the agency shop arrangements were subject to legal challenge, as well as SEIU's awareness that

---

[2] *See* MOU Article 5.

[3] The "AGENCY SHOP" clause in Article 5 states: "As a condition of new or continued employment, all employees shall become a member of SEIU or pay to SEIU an agency fee or fair share fee while SEIU serves as their exclusive bargaining representative over wages, benefits and working conditions. New employees have five (5) working days following the initial date of employment to fully execute the dues authorization form and return said form to Human Resources Payroll. If the form is not completed properly or returned within five (5) working days, service fees at the full member dues rate will be deducted from the employee's regular bi-weekly pay.  Excepted from the above are extra-help employees. All dues and fees withheld by the Court shall be transmitted to the SEIU Officer designated in writing by SEIU as the person authorized to receive such funds, at the address specified." Ex. A, Art. 5.

[4] Article 5 MOU provides that "The Court shall deduct an amount equal to SEIU's biweekly dues and remit that amount to SEIU if an employee has not authorized payroll deduction of such fee and SEIU certifies to the Court that such employee has not made payment to SEIU nor made arrangements with SEIU to satisfy his or her obligation by donating the equivalent amount of dues as specified above."

[5] The amount of the agency fees assessment being equal to union dues is legally suspect. New employees had five days to either join SEIU and pay union dues. If a new employee did not join SEIU, the same amount was automatically deducted in agency fees. Any portion of agency fees which subsidized SEIU's political activities was in violation of the Supreme Court's requirement in *Teachers v. Hudson,* 475 U.S. 292 (1986) that categories of expenses be exempted.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

a Supreme Court ruling protective of free and informed consent would result in less income for the union.

13.     The window period language of Article 5, *see supra,* was inserted to restrain members who might seek to exercise their Constitutional rights "at such time of a Supreme Court decision"[6] which would vindicate those rights.

14.     The window period language prevented Ms. Kant from withdrawing her authorization to fund SEIU and relinquished power over her private budgetary decisions to SEIU.[7]

15.     And yet, the actual window period language, which trapped the Ms. Kant into forced deductions years into the future, is absent from the Membership Form that the Ms. Kant actually saw and signed.[8]

16.     The U.S. Supreme Court struck down forced agency fees in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018). The ruling took place approximately 29 days after Ms. Kant joined SEIU.

**Ms. Kant decided to resign from SEIU so that she could use the money to support causes of her own choice**

---

[6] MOU Article 5.

[7] Ms. Kant's signature on the authorization empowered the Employer to take union fees out of her earnings before they were even received. By signing the card, Ms. Kant purportedly relinquished her right to prevent those deductions, as state law designates SEIU, the recipient of the funds, as the sole arbiter of her consent -- to the exclusion of the Ms. Kant. *See* Cal. Gov. Code § 1157.12.

[8] The Membership Form only incorporates the maintenance of membership "window" provision in Article 5 of the MOU by reference, and states in pertinent part: "Irrespective of my membership in the Union, deductions for this purpose shall remain in effect and be irrevocable unless revoked by me in writing in accordance with applicable provisions in the memorandum of understanding or agreement between my employer and SEIU Local 721. In the absence of such provision, this authorization shall remain in effect and can only be revoked by me in writing during the period not less than thirty (30) days and not more than forty-five (45) days before the annual anniversary date of this authorization." Ex. B.

COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

17.     In 2019, Ms. Kant discovered that SEIU makes large political contributions to a political party with whom she chooses "not to affiliate."

18.     Because she did not "wish to contribute even a penny" of her earned income "towards causes that I fundamentally disagree with," Ms. Kant decided to withdraw her membership from SEIU.

19.     Ms. Kant learned that that her freedom of choice regarding what causes she could subsidize with her earnings would not be restored until a future window period.

20.     According to the terms on Membership Form at the time Ms. Kant signed, which purported to incorporate[9] the maintenance of membership provision from the MOU, that window period would begin in July of 2019.

21.     Ms. Kant waited until July 2019.

22.     On July 11, 2019, Ms. Kant informed SEIU via certified mail that she does not affirmatively consent to the continued withdrawal of her lawfully earned wages and demanded that the union "immediately cease deducting all dues, fees, and political contributions." Exhibit D.

23.     On July 17, 2019, SEIU wrote Ms. Kant, stating that SEIU would remove her membership but would not direct the Employer to stop deducting dues from her earnings.

---

[9] The incorporation term in the membership card, is unconscionable and unenforceable, as the MOU was not made "readily available" to her at the time that she signed the membership agreement. "A secondary document becomes part of a contract as though recited verbatim when it is incorporated into the contract by reference provided that the terms of the incorporated document *are readily available to the other party*." (Emphasis added.) (*Williams Constr. Co. v. Standard-Pacific Corp.* (1967) 254 Cal.App.2d 442, 454, 61 Cal.Rptr. 912.) *King v. Larsen Realty, Inc.,* 121 Cal. App. 3d 349, 357, 175 Cal. Rptr. 226, 231 (Ct. App. 1981).

COMPLAINT
No.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

24.     The letter stated that the dues deduction would continue until a future date "as outlined in your membership application." The letter provided no further information to explain when the deductions would cease.  Exhibit E.

25.     Ms. Kant began telephoning SEIU to inquire about how to obtain a copy of the Membership Form so that she could read the terms and determine when SEIU would cease garnishing her wages.[10]

26.     After telephoning SEIU three times, she finally spoke to an SEIU representative who provided no information other than to refer Ms. Kant to the Employer.

27.     Ms. Kant obtained a copy of the MOU from Employer and was able to read the binding terms SEIU was enforcing over her.

28.     On July 31, 2019, Ms. Kant sent a Cease and Desist letter to SEIU via certified mail. In that letter she demanded that SEIU communicate to the Employer that she was no longer a member of SEIU and had withdrawn her consent for the dues deductions. Exhibit F.

29.     On August 14, 2019, SEIU wrote a letter acknowledging receipt of the Cease and Desist letter, stating that the matter was under investigation and that Ms. Kant would receive a response no later than August 30, 2019. Exhibit G.

30.     SEIU did not respond to the Cease and Desist letter on August 30, 2019, or any other time.

---

[10] Ms. Kant was not provided with the MOU at the time she signed the Membership Form, and SEIU did not provide a copy when it exercised the incorporated terms against her, instead referring her to the employer.

COMPLAINT
NO.

10

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1   31.    SEIU did not direct the Employer to stop deducting union dues from

2   her earnings and remitting them to SEIU.

3   32.    To date, Employer continues to deduct monies from Ms. Kant's

4   paycheck and remit them to SEIU.

5   **SEIU forced Ms. Kant's continued funding of its political activities by exercising unequal power over her**

6   *SEIU imposed unconscionable, open-ended terms upon Ms. Kant which afford her no firm expectation that dues deductions will ever end*

7   33.    In anticipation that the Supreme Court would eliminate forced agency

8   fees, SEIU began to employ a new tactic to ensure that dues would continue to flow

9   into their coffers indefinitely.

10   34.    For example, because the opt-out window for the MOU was from July

11   2 to August 1, 2019, SEIU made sure to sign an extension before the MOU's

12   expiration. By doing so, SEIU effectively changed the opt-out window for members,

13   without their knowledge, two years into the future. As long as SEIU and Employer

14   continue to extend the MOU, they could conceivably extend opt-out windows and

15   forced payments into perpetuity.

16   35.    On December 21, 2018, SEIU and Employer signed the 2019-2021 Side

17   Letter which extended the MOU's expiration to September 30, 2021. Exhibit C.

18   36.    The agreement stated in pertinent part:

19   "The Superior Court of California, County of San Bernardino and the Service Employees International Union, Local 721 met and have agreed to an extension of the 2015-2019 Memorandum of Understanding for an additional two years. The two-year extension will continue the terms of the current memorandum of understanding in full, except as modified below."

COMPLAINT
No.

11

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

37.     Then, when Ms. Kant resigned her membership with SEIU, the union refused to instruct the Employer to stop deducting Ms. Kant's money on the basis of that extension, asserting that Ms. Kant must continue to pay SEIU for another two years after she resigned membership.[11] Exhibit C.

38.     Since the Employer and SEIU agreed that Ms. Kant must pay SEIU for an additional two years, Ms. Kant had no choice. This was made possible by Cal. Gov't Code § 1157.12, the "contracts... that may be negotiated" term of the membership agreement,[12] and Article 5 of the 2015-2019 MOU.

39.     Thus, SEIU continues to appropriate approximately $44.70 from Ms. Kant's bi-weekly paychecks without her consent and against her express objection.

40.     From July 2019 to present, the Employer and SEIU have taken approximately $1912.10 of Ms. Kant's lawfully earned wages without her affirmative consent and against her express objection.

41.     This money was used by SEIU to fund political speech with which Ms. Kant does not agree.

*Ms. Kant's signature on the Membership Form rendered her subservient to a state law which would cut off control over financial affairs and place it in the hands of SEIU*

---

[11] In a 4/29/21 email from SEIU Membership Coordinator, Ashley Kerner, to SEIU's counsel, Glenn Rothner, regarding a different member, Kerner referred to Ms. Kant as "part of a group who sent us Cease and Desist letters when they originally tried to opt out but were not within their window period due to the contract extension agreement." Ms. Kerner further stated: "At that time, Legal advised us to tell these members who submitted opt-out requests during the period where the extension agreement was in place that the two-year extension of the MOU changed the expiration of the MOU to 2021." Kerner referenced an email sent to a different individual who was told that "Your employer and the union signed a two-year extension of the MOU which changed the expiration of the MOU to 2021." Ex. H.

[12] As the "contracts that may be in existence or that may be negotiated" term on the adhesive membership form which Ms. Kant signed, was SEIU's unconscionable attempt to reserve for itself unilateral power to hold Ms. Kant to a contract of indefinite duration, and its use as a basis for future extension agreements or Side Letters is unenforceable under California law. *See* C.C. 1670.5 (a).

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

42.     The Membership Form contained the following provision authorizing SEIU to instruct the Employer to pay dues to SEIU directly from Ms. Kant's earnings through payroll deductions:

> "I further authorize SEIU 721 *to instruct my employer* to deduct and remit to the Union, any dues, fees and general assessments from my paycheck and to adjust the amount of this deduction as may be required to comply with changes in premiums under existing agreements with insurance plans, or to comply with dues schedules and general assessments determined by the Union." Exhibit B.

43.     That arrangement is buttressed by a California statute, Cal. Gov. Code § 1157.12, which prohibits the Employer from communicating directly with Ms. Kant regarding the deductions, and instead mandates that the garnishments begin and/or end at the direction of SEIU alone.[13]

44.     Thus, under California state law, Ms. Kant's signature on the Membership Form form effectively cut off her direct communication with Employer regarding the dues deductions, and placed dominion over Ms. Kant's lawfully earned wages and budgetary priorities under SEIU's control.

45.     Nevertheless, Ms. Kant was not apprised of that at the time of signing, as neither the state law nor its effect over her personal liberty was recited on the Membership Form.

---

[13] The Statute states, in pertinent part: "Direct employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the public employer for any claims made by the employee for deductions made in reliance on that information." Cal. Gov. Code §1157.12(b)

COMPLAINT
NO.

13

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

46.     Nor was she informed that the statute affords no safety net for her protection should SEIU abuse that trust and continue to instruct the Employer to remit her earnings to SEIU, even after she had withdrawn consent.

47.     Pursuant to California state law, there are no negative ramifications for SEIU to ignore Ms. Kant's demand that it stop instructing the Employer to "deduct and remit" money[14] from her paychecks and to SEIU.

48.     Because state law allows SEIU to ignore Ms. Kant's protests and take her money with no negative ramifications, SEIU continues to ignore Ms. Kant's protests and take her money to this day.

49.     Under the First Amendment, the Employer cannot seize Ms. Kant's earnings for funding SEIU's political activity without her voluntary waiver of her First Amendment right to be free of compelled funding of objectionable speech, demonstrated by clear and compelling evidence. *Janus v. AFSCME*, 138 S. Ct. 2448, 2486.

50.     Nevertheless, state law has silenced Ms. Kant and blocked Employer from verifying Ms. Kant's waiver as it continues to seize earnings and remit them to SEIU.

51.     The Defendants maintain the constitutionality of these actions.

**COUNT I**
**Violation of the Right to Freedom from Compelled Speech Against All**
**Defendants**
**(42 U.S.C. § 1983)**

---

[14] *Id.*

COMPLAINT
No.

14

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

52.   Ms. Kant re-alleges and incorporates by reference each and every paragraph set forth above.

53.   Under the First Amendment, the government cannot take money from public employees' wages to pay union dues or fees without the employees' voluntary and informed affirmative waiver of her First Amendment right to be free of compelled funding of objectionable speech, demonstrated by clear and compelling evidence. *Janus v. AFSCME*, 138 S. Ct. 2448, 2486.

54.   The Defendants acted under color of state law and pursuant to Cal. Gov't Code § 1157.12 and the applicable MOUs to seize Ms. Kant's wages without her affirmative consent and against her express objection, for use in SEIU's political speech.

55.   Ms. Kant did not, and does not, support SEIU's political speech.

56.   Ms. Kant repeatedly informed SEIU that she did not affirmatively consent to the deduction of her lawfully earned wages for SEIU speech.

57.   SEIU disregarded those repeated requests and took no action to end the unauthorized deductions from Ms. Kant's lawfully earned wages once informed that she did not affirmatively consent to future deductions.

58.   Pursuant to state law, Cal. Gov't Code § 1157.12 and the applicable MOU, SEIU jointly acted with the Employer to seize Ms. Kant's lawfully earned wages without her affirmative consent.

59.   Because it authorizes the confiscation of Ms. Kant's lawfully earned wages without her affirmative consent, the scheme created by Cal. Gov't Code §

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1157.12 and the applicable MOU, on its face and as applied, violates Ms. Kant's First Amendment rights against compelled speech.

60.    The Defendants had no legitimate, let alone compelling, interest in depriving Ms. Kant of her First Amendment rights.

61.    Even if the Defendants' scheme did have a legitimate or compelling purpose, it is not narrowly tailored to support that interest.

62.    Ms. Kant seeks compensatory and nominal damages against SEIU for the violation of her First Amendment rights, and injunctive and declaratory relief against both Defendants.

**COUNT II**
**Deprivation of Liberty and Property Interests Without Procedural Due Process Against All Defendants**
**(42 U.S.C. § 1983)**

63.    Ms. Kant re-alleges and incorporates by reference each and every paragraph set forth above.

64.    The Fourteenth Amendment requires the provision of adequate procedures before an individual is deprived of liberty or property.

65.    Ms. Kant has a cognizable liberty interest in her First Amendment rights against compelled speech.

66.    Ms. Kant has a cognizable property interest in her lawfully earned wages seized by the Defendants without her affirmative consent.

67.    Defendants' scheme for the seizure of dues for use in SEIU's political speech does not include any procedural protections sufficient to meet the requirements of the Due Process Clause.

COMPLAINT
No.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

68.     Neither Cal. Gov't Code § 1157.12 nor the applicable MOU establish any procedures to convey notice to Ms. Kant before the Employer seized her wages without her affirmative consent for use in SEIU's political speech.

69.     Neither Cal. Gov't Code § 1157.12 nor the applicable MOU establish any procedures to provide Ms. Kant with any pre-deprivation or post-deprivation hearing or other opportunity to object to the Employer regarding the seizure of her wages for use in SEIU's political speech.

70.     Pursuant to state law, Cal. Gov't Code § 1157.12 and the applicable MOU, SEIU jointly acted with the Employer to deny Ms. Kant her procedural due process rights.

71.     Because it lacked the necessary procedural safeguards to protect Ms. Kant's First Amendment liberty interests and her property interests in her lawfully earned wages, Defendants' dues deduction scheme, on its face and as applied, violates Ms. Kant's right to procedural due process.

72.     Ms. Kant seek compensatory and nominal damages against the Defendants for the violation of her procedural due process rights, and injunctive and declaratory relief against all Defendants.

**COUNT III**
**Violation of 42 U.S.C. § 1983 for the Inherently Arbitrary Deprivation of Free Speech Liberty Interests Against All Defendants**

73.     Ms. Kant re-alleges and incorporates by reference each and every paragraph set forth above.

COMPLAINT
NO.

17

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    74.    The substantive component of the Due Process Clause prohibits

2    restraints on liberty that are inherently arbitrary. Hence, substantive due process

3    bars certain government actions regardless of the fairness of the procedures used to

4    implement them.

5    75.    Infringements of substantive due process rights are subject to strict

6    constitutional scrutiny and must be narrowly tailored to serve a compelling state

7    interest.

8    76.    Ms. Kant has a cognizable liberty interest in her First Amendment

9    rights.

10    77.    The sole means available to Ms. Kant and public employees to

11    terminate her union membership and end her dues deductions under Cal. Gov't

12    Code § 1157.12 and the applicable CBA, requires her termination requests be

13    directed to SEIU.

14    78.    SEIU is an inherently biased and financially interested party with an

15    incentive for dues deductions continue, whether an employee has given affirmative

16    consent or not.

17    79.    SEIU has no incentive to release Ms. Kant, or other comparably

18    situated public employees, from their memberships.

19    80.    Rather, SEIU has a direct financial and legal incentive to represent to

20    the Employer that Ms. Kant had provided the clear and affirmative consent

21    required by Janus, even when Ms. Kant has affirmatively terminated her agreement

22    and clearly withdrawn her consent.

23

24    COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    81.    Under these provisions, the Employer is allowed neither to

2    independently verify whether Ms. Kant affirmatively consented to the deduction of

3    dues from her pay to be remitted to SEIU, nor request she submit a new verifiable

4    authorization.

5    82.    As a result, Defendants' scheme has the purpose and effect of

6    arbitrarily burdening Ms. Kant's ability to exercise her First Amendment rights.

7    83.    Ms. Kant has a substantive due process right to exercise her First

8    Amendment rights without suffering the conflict of interest imposed by

9    Defendants' scheme.

10    84.    Because it creates an inherent and arbitrary conflict of interest

11    burdening Ms. Kant's ability to exercise her First Amendment rights, Defendants'

12    dues deduction scheme, on its face and as applied, violates Ms. Kant's right to

13    substantive due process.

14    85.    The Defendants had no legitimate, let alone compelling, interest in

15    depriving Ms. Kant of her First Amendment rights.

16    86.    Even if the Defendants' scheme did have a legitimate or compelling

17    purpose, it is not narrowly tailored to support that interest.

18    87.    Pursuant to state law, Cal. Gov't Code § 1157.12, and the applicable

19    CBA, the Employer jointly acted with SEIU to deny Ms. Kant her substantive due

20    process rights.

21

22                                  **COUNT IV**
      **The Membership Form Signed By Ms. Kant Is Void For Unconscionability**

23

24    COMPLAINT
      NO.                                              19

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1        88.    Ms. Kant re-alleges and incorporates by reference the paragraphs set

2  forth above.

3        89.    The Membership Forms signed by Ms. Kant are unconscionable

4  because SEIU presented the forms to Ms. Kant as take-it-or-leave-it form

5  contracts.

6        90.    There was no bargaining involved because Ms. Kant does not have

7  equal bargaining power to SEIU.

8        91.    The membership process afforded Ms. Kant no opportunity to make a

9  free and meaningful choice. She was required to either sign the card and pay union

10  dues to SEIU, or not sign the card and pay SEIU an equal amount in agency fees.

11       92.    Based on the above, the Membership Form is procedurally

12  unconscionable.

13       93.    The Membership Form is also substantively unconscionable because it

14  attempted to incorporate indefinite future contracts via extension agreements.

15       94.    The Membership Form stated as follows: "I agree to be bound by the

16  Constitution and Bylaws of the Union and by any contracts that may be in

17  existence at the time of application *or that may be negotiated by the Union*."

18       95.    Not only were the binding terms of the MOU not readily and easily

19  available to Ms. Kant when she signed the Membership Form, the 2019-2021 Side

20  Letter was not even in existence at the time she signed the Membership Form in

21  2018.

22

23

24  COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

96.     That means that Ms. Kant was bound by the terms of a contract that did not exist at the time she signed the Membership Form.

97.     The membership application is unconscionable because it provided SEIU power to unilateral modify the Membership Form.

## PRAYER FOR RELIEF

98.     Wherefore, Ms. Kant respectfully request that this Court:

**A.     Issue a declaratory judgement:**

- That the Defendants' scheme to seize Ms. Kant's wages without her affirmative consent under Cal. Gov't Code § 1157.12 and the applicable CBA, and all other similarly situated employees, is a violation of the First Amendment;

- That the Defendants' failure to provide Ms. Kant, and similarly situated employees, without prior notice and an opportunity to dispute the seizure of her wages without her affirmative consent, is a violation of the Fourteenth Amendment's guarantee of procedural due process;

- That the Defendants' scheme requiring Ms. Kant, and other similarly situated employees, to direct her membership and dues authorization termination requests to a third-party union with a direct financial incentive to continue dues deductions without the Ms. Kant's affirmative consent, is inherently arbitrary and a violation of the Fourteenth Amendment's guarantee of substantive due process.

- That Membership Forms are void as unconscionable.

**B.     Issue a permanent injunction:**

COMPLAINT
NO.

21

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1   •   Enjoining the Defendants from seizing the wages of public employees

2   without their voluntary and informed affirmative consent under Cal. Gov't Code §

3   1157.12 and the applicable MOU;

4   •   Enjoining the Defendants from agreeing to and enforcing a procedure

5   for deducting money from the pay of public employees that violates the First and

6   Fourteenth Amendments; ordering the Defendants to implement a process providing

7   adequate procedures for confirming public employees' voluntary and informed

8   affirmative consent prior to the deduction of any money from their pay;

9   •   Enjoining the Defendants from agreeing to and enforcing an inherently

10   arbitrary procedure that violates the First and Fourteenth Amendments; ordering the

11   Defendants to implement a process by which Employer must directly confirm public

12   employees' voluntary and informed affirmative consent prior to the deduction of any

13   money from their pay.

14   •   Enjoining the Defendants from enforcing the Membership Form and

15   enjoining Defendants from continuing to deduct dues from Ms. Kant.

16   **C.   Enter a judgment:**

17   •   Against Defendant SEIU awarding Ms. Kant compensatory damages of

18   approximately $1912.10 for the monies deducted from her lawfully earned wages

19   without her affirmative consent, with interest, including any monies take from her

20   lawfully earned wages without her consent after the filing of this lawsuit;

21   •   Against Defendant SEIU awarding Ms. Kant compensatory damages

22   for the violation of her First Amendment rights against compelled speech, in an

23

24   COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1   amount to be determined at trial.

2       •     Against Defendants awarding Ms. Kant $1.00 each in nominal damages

3   for the deprivation of her First Amendment and Fourteenth Amendment Due Process

4   rights.

5       •     Any other compensatory damages for enforcing an unconscionable

6   agreement against Ms. Kant.

7   **D.**     **Other applicable relief:**

8       •     Award Ms. Kant her costs and attorneys' fees under 42 U.S.C. § 1988;

9       •     Award Ms. Kant any further relief to which she may be entitled and

10  such other relief as this Court may deem just and proper.

11

12  Date: July 9, 2021

13      Respectfully submitted,

14      FREEDOM FOUNDATION

15      Elena Ives, Cal Bar No. 331159
16      Shella Sadovnik, Cal Bar No. 267551
    Freedom Foundation
17      PO Box 552
    Olympia, WA  98507
18      Telephone: (360) 956-3482
    ssadovnik@freedomfoundation.com
19      eives@freedomfoundation.com
20      *Attorneys for Plaintiff*

21

22

23

24  COMPLAINT
No.

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874